IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re:<br>Ricky Lynn Gandy,<br>　Debtor. | §<br>§<br>§<br>§ | Case No. 05-30651-H1-13<br>(Chapter 13) |
| In re:<br>Elvia Diaz,<br>　Debtor. | §<br>§<br>§<br>§<br>§ | Case No. 05-32244-H2-13<br>(Chapter 13) |
| Elvia Diaz,<br>　Plaintiff,<br><br>v.<br><br>State of Texas,<br>　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adversary No. 05-3253 |

## JOINT MEMORANDUM OPINION

On April 22, 2005, this Court issued an order in *In re Gandy*,[1] finding that the automatic stay did not apply to a prepetition state court lawsuit brought by governmental units against Mr. Gandy. On April 29, 2005, this Court denied an Application for a Temporary Restraining Order in *Diaz v. State of Texas*,[2] finding that the automatic stay did not apply to a prepetition state court suit brought by the State of Texas against Ms. Diaz. The two decisions involve substantially similar questions of law. This Joint Memorandum Opinion provides the findings and conclusions on which the decisions were based.

### Gandy Background

On March 24, 2004, Harris County filed a lawsuit in state court against Mr. Gandy for violations of various state environmental laws, including the Texas Solid Waste Disposal Act

---

[1] Case no. 05-30651.

1

and the Texas Clean Air Act. In the state court suit, the County requested injunctive relief, fees and costs. On June 25, 2004, the Texas Commission on Environmental Quality intervened in the suit. The principal allegation in the lawsuit is that Mr. Gandy used his property to store debris from site clearing and construction projects. The bulk of the debris was comprised of wood products (such as tree stumps) and used building materials. The governmental units allege that Mr. Gandy's present use of the property violates Texas law. On August 4, 2004, the state court issued a temporary restraining order concerning Mr. Gandy's alleged violations of state environmental laws.

On January 11, 2005, Mr. Gandy filed a petition for relief under chapter 13 of the Bankruptcy Code. Mr. Gandy then filed a suggestion of bankruptcy with the state court requesting "the observance of the Stay Order under § 362." Pursuant to Mr. Gandy's suggestion—and in spite of the governmental units' arguments that the suit was not subject to the automatic stay—the state court stayed all proceedings.

On March 17, 2005, Harris County and the Texas Commission on Environmental Quality filed their Amended Motion to Determine the Non-Applicability of Stay Pursuant to 11 U.S.C. § 362(b)(4). Mr. Gandy filed a response on April 14, 2005. The Court conducted a hearing on this matter on April 22, 2005. At the conclusion of the hearing, the Court issued an order determining that the stay did not apply to the state court suit.

### Diaz Background

On February 3, 2005, the State of Texas filed a lawsuit against Ms. Diaz in the 113th Judicial District Court of Harris County. The lawsuit alleges that Ms. Diaz committed consumer fraud under the Deceptive Trade Practices Act related to her work as a notary public. In general,

---

[2] Case no. 05-32244; Adversary no. 05-3253.

the lawsuit alleges that Ms. Diaz misrepresented her services as a "notario" with the effect of misleading Houston's large Mexican immigrant population into believing that she could serve as an attorney. The State alleges that the term "notario" is a term used by licensed attorneys in Mexico and that Ms. Diaz is intending to mislead the public in violation of Texas law.[3]

On February 13, 2005, Ms. Diaz filed a petition for relief under chapter 13. Apparently, Ms. Diaz's state court counsel signed an agreed order stipulating to the non-applicability of automatic stay to the proceeding. Despite this agreed order, Ms. Diaz filed an application for a temporary restraining order to prevent the state court from proceeding with the lawsuit and to seek damages for violations of the automatic stay. This Court denied the application and Ms. Diaz's request for damages based on the non-applicability of the automatic stay.

## Analysis

This Court is frequently called upon to determine whether the automatic stay applies to state court lawsuits involving a governmental unit's enforcement of police and regulatory powers. Sometimes—as occurred in Mr. Gandy's case—despite the plain application of the police and regulatory power exception, a debtor will file a suggestion of bankruptcy or affirmatively represent to the state court that the automatic stay precludes a state court from continuing with its adjudication. In other instances, as evidenced by Ms. Diaz's case, debtors seek injunctive relief from the bankruptcy court to stop the state court litigation based on the application of the automatic stay. Regardless of form, the debtors' actions sometimes lead state courts to stay the proceedings while awaiting an order from the bankruptcy court before continuing with their cases. Such actions delay state court proceedings and waste the resources of the parties and the courts. The Court appreciates the comity shown by state courts when they

---

[3] Ms. Diaz alleges that she is not currently advertising any services as a "notario" and has given up her Notary Public license.

decline to proceed in the face of a pending bankruptcy case. Nevertheless, the Court finds that its duty of reciprocal comity requires the issuance of this opinion. Accordingly, this Court issues this Joint Memorandum Opinion clarifying that the state courts in the present cases had the authority to determine that the automatic stay did not apply to the governmental units' actions to enforce their police and regulatory power.

### Concurrent Jurisdiction

This Court has previously examined the issue of whether state courts possess jurisdiction and authority to determine whether the automatic stay applies. *In re Edwin A. Epstein, Jr. Operating Co., Inc.*, 314 B.R. 591, 598-99 (Bankr. S.D. Tex. 2004). In determining that state courts are vested with jurisdiction, the Court's analysis began with the jurisdictional grant provided by Congress:

> The U.S. Constitution gives Congress plenary power over bankruptcy thus allowing Congress to limit the jurisdiction that courts can exercise over the person and property of a debtor who duly invokes the bankruptcy law. U.S. CONST., art. I, § 8; *Kalb v. Feuerstein*, 308 U.S. 433, 439 (1940). The current bankruptcy jurisdictional statute, 28 U.S.C. § 1334, defines the role of the federal district courts in bankruptcy. Section 1334(a) provides, "[e]xcept as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Section 1334(b) then provides: "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original *but not exclusive jurisdiction* of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

*Id.* (emphasis added). In *Edwin A. Epstein, Jr. Operating Co., Inc.*, an arbitration panel[4] erroneously ruled that the automatic stay did not apply to various claims against the debtor's interests in various oil and gas properties. *Id.* The effect of this decision was to impermissibly

---

[4] In the *Edwin Epstein Operating Co., Inc.*, opinion, the Court presumed that the arbitration panel was vested with the full jurisdiction of a Texas state court. *See In re Edwin A. Epstein, Jr. Operating Co., Inc.*, 314 B.R. at 598 n.13.

4

annul or terminate the automatic stay. *Id.*[5] Thus, while the Court found that state courts possess concurrent jurisdiction—pursuant to § 1334(b)—to determine whether the stay applies, state courts lack authority to terminate the stay when it in fact does apply. *Id.* The bankruptcy court alone has authority to modify the automatic stay. *Id.* For the reasons set forth in *Edwin A. Epstein, Jr. Operating Co., Inc.*, an erroneous determination of the inapplicability of the automatic stay would be voidable. Of course, the automatic stay does not arise when the police and regulatory exception applies. 11 U.S.C. § 362(b)(4). In a police and regulatory exception case—where the automatic stay has never arisen—the state court has concurrent jurisdiction to so determine.

### The Automatic Stay and the Police and Regulatory Power Exception

Section 362(a)[6] provides for an automatic stay of certain acts upon the filing of a bankruptcy petition under any chapter of the Bankruptcy Code. 11 U.S.C. § 362(a); *In re Pierce*, 272 B.R. 198, 209 (Bankr. S.D. Tex. 2001); 2 COLLIER ON BANKRUPTCY ¶ 303.12 (15th ed. 2004). "The purpose of the automatic stay is to give the debtor a 'breathing spell' from his

---

[5] In areas where state courts have concurrent jurisdiction, the jurisdiction may not be exercised when the automatic stay precludes the matter from proceeding in state court. *See In re Brady, Texas Mun. Gas Corp.*, 936 F.2d 212, 218 (5th Cir. 1991), *cert. denied*, 502 U.S. 1013 (1991). The Code allows only the bankruptcy court to annul or modify the automatic stay. 11 U.S.C. § 362(d); *see Farley v. Henson*, 2 F.3d 273 (8th Cir.1993); *Continental Cas., Co. v. Gullett*, 253 B.R. 796 (S.D. Tex. 1999).

[6] Section 362(a) states, "[e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title …operates as a stay, applicable to all entities of: (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor."

creditors, and also, to protect creditors by preventing a race for the debtor's assets." *Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984) (citations omitted). The stay prohibits lien enforcement and other actions, judicial or otherwise, that are attempts to enforce or collect prepetition claims. 11 U.S.C. § 362. It also stays a wide range of actions that would affect or interfere with property of the estate, property of the debtor, or property in the custody of the estate. *Id.*

Although the reach of the automatic stay is broad, it is not unlimited. Some actions that would otherwise fall within the scope of the stay are excepted from the stay. The exceptions are typically based on particular policy objectives. One important exception to the automatic stay is the police and regulatory power exception. The police and regulatory power exception is based on the compelling need for the government to continue to protect the public when a debtor files for bankruptcy and to "prevent a debtor from 'frustrating necessary governmental functions by seeking refuge in bankruptcy court.'" *SEC v. Brennan*, 230 F.3d 65, 71 (2nd Cir. 2000) (citing *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1024 (2nd Cir. 1991) (internal quotation marks omitted); *In re Commonwealth Cos, Inc.*, 913 F.2d 518, 527 (B.A.P. 8th Cir. 1990) (quoting *Commodity Futures Trading Comm'n. v. Co Petro Mktg. Group Inc.*, 700 F.2d 1279, 1283 (9th Cir. 1983) ("a fundamental policy behind the police or regulatory power exception ... is 'to prevent the bankruptcy court from becoming a haven for wrongdoers.'")) The exception accomplishes this goal by allowing the government to enforce various laws and regulations against a debtor. Specifically § 362(b)(4) states:

> The filing of a petition ... does not operate as a stay...of the commencement or continuation of a criminal action or proceeding against the debtor...of the commencement or continuation of an action or proceeding by a governmental unit...to enforce such governmental unit's or organization's *police and regulatory power, including the enforcement of a judgment other than a money judgment,*

> *obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power....*

11 U.S.C. § 364(b)(4) (emphasis added). Thus, "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." H.R. Rep. No. 95-595, at 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299; S. Rep. No. 95-989, at 52, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838. Therefore, while the majority of actions against a debtor must cease, a *bona fide*[7] governmental unit action to enforce its police and regulatory power is unaffected by the automatic stay.

To determine whether an action falls under the police and regulatory power exception, a court must engage in a two-prong test. First, the court must determine whether the plaintiff in the state court action is a "governmental unit." *See* 11 U.S.C. § 362(b)(4) (excepting proceedings "by a governmental unit"). If the court answers this question in the affirmative, the court must next determine whether the governmental unit is seeking to enforce its police and regulatory power.

The first prong of the test is determined by reference to 11 U.S.C. § 101(27). Under § 101(27) a "governmental unit" is defined as:

> [the] United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

---

[7] Of course, the government may not act with artifice. If the government proceeds under § 362(b)(4) when it is not exercising its police and regulatory powers, the governmental unit will have violated the automatic stay by seeking the determination (based in artifice) from the state court. *See In re Edwin A. Epstein, Jr. Operating Co., Inc.*, 314 B.R. 591.

Thus, if the plaintiff in a state court action fits within the § 101(27) definition, it is considered a governmental unit.

The more difficult question is whether the governmental unit is enforcing its police and regulatory power. Courts have developed two tests to define when an action qualifies as an exercise the government's police and regulatory power. The first is termed the "pecuniary interest" test. *Commonwealth Cos*, 913 F.2d at 523. Under the pecuniary interest test, the court must determine whether the governmental unit is pursuing a matter of public interest rather than advancing the government's pecuniary interest. *See id.*; *In re Dunbar*, 235 B.R. 465, 471 (B.A.P. 9th Cir. 1999); *In re Charter First Mortgage, Inc.*, 42 B.R. 380, 382 (Bankr. D. Or. 1984). This test requires courts to distinguish between a police and regulatory enforcement action and an attempt by a governmental unit to collect money damages that do not arise from an exercise of a governmental unit's police or regulatory power. For example, a governmental unit's action on a debt arising from a normal commercial transaction to purchase goods or services,[8] or an action to collect taxes,[9] are generally stayed by the automatic stay. However, if the money damages are ancillary to the governmental unit's enforcement of its police and regulatory power, then the action itself is not stayed, though collection of the judgment is stayed. *Brennan*, 230 F.3d at 71-73. As explained by the Fifth Circuit:

---

[8] *See In re Coporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d 440, 445-46 (1st Cir. 1986) (stating that "actions by a governmental agency to enforce [its] contractual rights," even if related in some way to a regulatory concern, are not police and regulatory; there was no showing that the government's actions were based on any generally applicable regulatory law, as opposed to rights solely derived from terms of contract); *United States v. Nicolet Inc.*, 857 F.2d 202, 209 (3rd Cir. 1988) (stating that a government suit would not be excepted when the government is "suing in its role as a consuming participant in the national economy").

[9] *See In re Thomassen*, 15 B.R. 907, 909 (Bankr. 9th Cir.1981) ("State and local governmental units cannot, by an exercise of their police or regulatory powers, subvert the relief afforded by the federal bankruptcy laws. When they seek to do so for a pecuniary purpose, they are automatically stayed, notwithstanding the exception found at 11 U.S.C. § 362(b)(4)"; *Matter of Ballentine Bros., Inc.* 86 B.R. 198 (Bankr. D. Neb. 1988) (finding that county's real estate tax assessments and levies were pecuniary actions and not acts enforcing county's police or regulatory power).

> Quite separate from the entry of a money judgment, is a proceeding to enforce that money judgment. The paradigm for such a proceeding is when, having obtained a judgment for a sum certain, a plaintiff attempts to seize property of the defendant in order to satisfy that judgment. It is this seizure of a Defendant-Debtor's property, to satisfy the judgment obtained by a Plaintiff-Creditor, which is proscribed by subsection 362(b)(5).

*Commonwealth Oil Ref. Co.*, 805 F.2d at 1186. The purpose of allowing a governmental unit to proceed to judgment for civil penalties in an enforcement lawsuit is to fix damages for purposes of the bankruptcy action. *SEC v. Bilzerian*, 131 F. Supp. 2d 10, 14 (D.D.C. 2001) (permitting an accounting but not actual disgorgement of funds). Thus, a state court may liquidate the claim and enter a judgment but the governmental unit is stayed from enforcing the money judgment against a debtor without an order of the bankruptcy court.

The second test is the "public policy" test. *See NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986). Under the public policy test, the court must determine whether the proceeding is designed to "effectuate public policy" rather than to "adjudicate private rights." *Dunbar*, 235 B.R. at 471 (citing *Universal Life Church*, 128 F.3d at 1299 (9th Cir. 1997)); *In re Charter First Mortgage, Inc.*, 42 B.R. at 383. Only the former actions are exempt under § 362(b)(4). *N.L.R.B.*, 804 F.2d at 934. A governmental unit may not adjudicate the private rights of its citizens under the guise of public protection to escape the general stay provision of § 362. *See In re Charter First Mortgage, Inc.*, 42 B.R. at 383-84. For guidance in this test, courts should refer to the legislative history of § 362(b)(4) to determine whether the subject proceeding is one of the enumerated types of proceedings to which § 362(b)(4) clearly applies. *See In re Eagle Bus Mfg., Inc.*, 158 B.R. 421, 427 (S.D. Tex. 1993). The relevant legislative history of § 362(b)(4) states:

> [Section 362(b)(4)] excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud,

environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

*In re Commonwealth Oil Ref. Co.*, 805 F.2d 1175, 1182-83 (5th Cir. 1986) (quoting H.R. Rep. No. 95-595, at 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299; S. Rep. No. 95-989, at 52, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838). Thus, where the government is enforcing these enumerated examples, the governmental unit is clearly enforcing public rights.

Further examples of governmental unit actions where courts have applied the police and regulatory power exception include: state bar disciplinary proceedings, labor law enforcement proceedings, enforcement of environmental regulations,[10] enforcement of consumer protection laws,[11] revocations of licenses,[12] and other similar police or regulatory laws. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.05(b)(5) (15th ed. 2004).

---

[10] *See Safety – Kleen (Pinewood), Inc. v. Wyche*, 274 F.3d 846 (4th Cir. 2001) (holding that financial assurance regulations were a clear exercise of the state's regulatory power because their purpose was to deter environmental misconduct); *Penn Terra, Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267 (3rd Cir. 1984) (stating that Commonwealth's injunction was exempt from automatic stay because it was an action or proceeding by a governmental unit to enforce police or regulatory power); *United States v. LTV Steel Co.*, 269 B.R. 576 (Bankr. W.D. Pa. 2001) (stating that the automatic stay does not protect Chapter 11 debtors from suit to assess civil penalties under Clean Air Act); *In re Mateer*, 205 B.R. 915 (Bankr. C.D. Ill. 1997) (holding that environmental enforcement action against Chapter 7 debtor is not stayed); *State v. Mirant New York, Inc.*, 300 B.R. 174 (Bankr. S.D.N.Y. 2003) (noting that the automatic stay does not preclude the debtor from entering into environmental consent decree or the state from enforcing it).

[11] *See In re First Alliance Mortgage Co.*, 263 B.R. 99 (B.A.P. 9th Cir. 2001) (holding that a consumer protection action brought by the Massachusetts Attorney General which sought not only the cessation of ongoing consumer fraud, but also a judgment against the debtor for civil penalties, attorneys' fees, and restitution for the debtor's customers, was excepted from the automatic stay by § 362(b)(4) and noting that while the exception permitted the state to proceed in its attempt to obtain a monetary judgment, it did not permit any effort to collect or enforce any judgment so obtained); *In re Draughon Training Inst., Inc.*, 119 B.R. 921 (Bankr. N.D. La. 1990) (stating that consumer protection statutes and court proceedings to determine violations of consumer protection statutes are both valid exercises of police and regulatory power for purposes of the automatic stay exception).

[12] *See In re FCC*, 217 F.3d 125, 131-32 (2d Cir. 2000) (noting that § 362(a) did not preclude agency's revocation of spectrum licenses); *In re Yellow Cab Co-op. Ass'n*, 132 F.3d 591, 599 (10th Cir. 1997) (stating that § 362(a) did not preclude revocation of taxi company's operating certificate); *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1296 (9th Cir. 1997) (stating that § 3629(a) did not preclude IRS revocation of church's tax-exempt status). However, under section 525(a) of the Bankruptcy Code, 11 U.S.C. § 525(a), an agency may not revoke a debtor's license 'solely' because the debtor is insolvent or has not paid a debt. *See Nextwave Pers. Commc'ns, Inc. v. FCC*, 254 F.3d 130, 149-52 (D.C. Cir. 2001), *cert. granted*, No. 01-653, 2002 WL 332062 (U.S. Mar. 4, 2002) (stating that section 523 may protect debtor even when section 362 does not).

### Application to *In re Gandy*

In applying the "police and regulatory exception" to Mr. Gandy's case, the plaintiffs—Harris County and the Texas Commission on Environmental Quality—are governmental units as defined by § 101(27). Further, the enforcement of state environmental laws falls within the gambit of the police and regulatory powers excepted by § 362(b)(4) under either the pecuniary interest or public policy tests. *See Safety - Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 859 (4th Cir. 2001).

The action meets the pecuniary interest test because the governmental units were pursuing a matter of public safety and welfare through injunctive relief rather than seeking a monetary award. *See, e.g., Commonwealth Cos*, 913 F.2d at 523. In the state court action, the governmental units allege that Mr. Gandy is violating the Texas Solid Waste Disposal Act and the Texas Clean Air Act. They are seeking injunctive relief to stop Mr. Gandy from using his property to store debris and other materials that allegedly violate state law. Thus, under the pecuniary interest test, Mr. Gandy's state court suit constitutes enforcement of the governmental units' police and regulatory power.

The action also satisfies the public policy test because the purpose of the proceeding is to further public policy instead of adjudicating private rights.[13] *Dunbar*, 235 B.R. at 471. Generally, proceedings to enforce environmental statutes invoke the police and regulatory exception to the automatic stay. *See* COLLIER ON BANKRUPTCY ¶ 362.05(b)(5) (15th ed. 2004). This suit is brought

---

[13] This opinion does not address whether a governmental unit's enforcement of a "bad check complaint"—the remedy to which may be to require the debtor to compensate the check's holder—violates the stay.

to further the State's public policy of protecting the environment and does not implicate, much less adjudicate, the personal rights of any citizen. Accordingly, because the state court proceeding is enforcing environmental laws, which furthers public policy, it is excepted from the automatic stay based on the police and regulatory exception.

At the hearing on Mr. Gandy's case, there were substantial evidentiary disputes regarding (i) whether there was any immediate threat and (ii) whether Mr. Gandy was, in fact, in violation of the law. This Court will not address the merits of those disputes. If a governmental unit is attempting to enforce its police and regulatory powers, this Court (as does a state court with concurrent jurisdiction) only looks to the four corners of the complaint to determine if the purpose of the litigation by the governmental unit is to enforce its police and regulatory powers. If the purpose of the state court lawsuit is police and regulatory, the inquiry as to the application of the automatic stay is completed and the action is not stayed. *See Board of Governors of the Fed. Reserve Sys. v. MCorp Fin.*, 502 U.S. 32, 40 (1991). This Court should not examine the merits of the litigation.[14]

> MCorp contends that in order for § 362(b)(4) to obtain, a court must first determine whether the proposed exercise of police or regulatory power is legitimate.... We disagree. MCorp's broad reading of the stay provisions would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity. Such a reading is problematic....

*Id.*

Of course, when examining the four corners of the complaint, this Court and others with concurrent jurisdiction must be mindful of the need to avoid artifice. If the governmental unit is

---

[14] To engage in a merits inquiry would mean that this Court's decision as to the application of the automatic stay would be affected by the merits inquiry. Because the merits of the governmental unit's allegations play no role in the determination of the automatic stay's application, the Court will not indulge in such an inquiry. Accordingly, in

12

not engaged in the *bona fide* enforcement of its police and regulatory powers, it is violating the automatic stay and may not proceed to obtain a determination to the contrary.

### Application to *In re Diaz*

In the Diaz case, the State of Texas has brought a lawsuit against Ms. Diaz for alleged violations of the Deceptive Trade Practices Act. As discussed above, the State is a governmental unit. Further, the Deceptive Trade Practices Act is a consumer protection law. *See In re First Alliance Mortg. Co.*, 263 B.R. 99, 108 (B.A.P. 9th Cir. 2001) (actions brought by the State to implement the law are generally an exercise of its police and regulatory powers). Unlike the facts in Mr. Gandy's case, however, here the State is seeking damages in addition to injunctive relief. Despite this difference, the State's action passes the pecuniary interest test because the State is seeking injunctive relief. Ms. Diaz argues that the State is not seeking injunctive relief because she has given up her notary license and is no longer practicing as a notary. Thus, she reasons that the only possible purpose of the remaining litigation is to determine a monetary award against her. Ms. Diaz's argument is unavailing. Simply because a defendant has ceased the alleged offensive conduct does not remove a governmental unit's ability to prosecute under its police and regulatory power. *In re First Alliance Mortg. Co.*, 263 B.R. 99, 113 (B.A.P. 9th Cir. 2001) (application of the police or regulatory exception to enforcement actions by the Federal Trade Commission to enjoin illegal lending, even though the debtor had already agreed to cease loan originations). Further, although the State is seeking monetary damages, enforcement of any money judgment is stayed. Accordingly, because the State is seeking injunctive relief, and because enforcement of any money judgment is stayed, the State's action passes the pecuniary interest test.

---

determining that the automatic stay does not apply, this Court is expressing no opinion of the merits of the government's claims or on the merits of Mr. Gandy's defenses.

13

14

The public policy test is also met because the government's lawsuit is not an adjudication of private rights but an effectuation of public policy. Only proceedings which effectuate public policy are exempt under § 362(b) (4). *N.L.R.B.*, 804 F.2d at 383. The purpose of the Deceptive Trade Practices Act is to further the public policy of protecting Texas consumers from actions such as those alleged to have been committed by Ms. Diaz. *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 743 (Tex. App.—Fort Worth 2005). Therefore, the lawsuit against Ms. Diaz is excepted from the automatic stay under § 362(b)(4).

Signed at Houston, Texas, on July 18, 2005.

_____
**Marvin Isgur**
**UNITED STATES BANKRUPTCY JUDGE**